I just wanted to remind you of the timing. When it turns yellow, you need to be wrapping up. Red, you're done. But if we're still asking questions, you can't run away. So then you would need to answer them. So with that, we'll go ahead. We've got a lot to do. So we'll go ahead and get started. And please know you don't have to use all your time if you don't need to. So case number 22-30687, Pipkins v. Stewart. And we'll begin with James Craig representing Pipkins. Ed Howell. Yes. Thank you, Your Honor. May it please the Court. Can I go home now? No. Sorry. The district court exceeded its authority on summary judgment in this case. It did not view the evidence in the light most favorable to the plaintiffs, nor give the plaintiffs the benefit of reasonable inferences a jury could find from the evidence. Instead, the court below weighed the credibility of the witnesses, weighed the evidence presented by the parties, and resolved factual disputes, crossing the boundary into the province of the jury on each of the three elements of the two Monel claims brought by these plaintiffs. So on the first element, the evidence of a widespread custom or practice, the district court discounted the expert opinion of Drs. Diamond and Kaiser. Counsel, isn't the first element whether your clients have constitutional claims individually? Or put differently, can you have a Monel claim where the plaintiffs themselves have no claim? I would think if the plaintiffs' constitutional rights were not violated, then there would be no Monel claim. So can we start there? We can start there. It was by the time we had gotten to the 14th Amendment, it had already been determined by the district court, obviously, in the order on the motion to dismiss. In Powers v. Ohio, the Supreme Court noted that the third-party standing that a criminal defendant has to challenge the exclusion of a prospective juror because of their race, gender, or other category forbidden by the 14th Amendment is held by the criminal defendant, but that it is the juror's claim. And Justice Kennedy stated in Powers that although a few of these claims have been advanced, that they existed. I'm sorry, I'm not quoting it, but that's basically our position. So can we walk through your three plaintiffs and show me where they were excluded on the basis of race? Yes, Your Honor, and we discussed this more specifically in our discussion of moving force because I think that's where it matters. With respect to that, we adopted the concepts from the Supreme Court's Flowers opinion where multiple factors were listed from which one could determine if a particular strike was motivated, in this case, by race, which could include statistical evidence, disparate questioning, side-by-side comparisons, misrepresentations of the record, and the relevant history. So let's start, maybe, unless you have a different preference, can we start with Johnson? Start with, I'm sorry? With Johnson. So Diane Johnson was struck. Mr. Brown had no actual memory of the grounds for the strikes. He was not required to give race-neutral reasons in the moment, and as you'll note, there was no transcript of the voir dire for that particular day. So I'm looking at page 2302 of the record, which I gather are the ADA's notes. They are the notes, yes. And I see under Johnson, it says, PD bias because of record. Would that be a race-neutral basis for striking Johnson or no? It would potentially be a race-neutral reason for striking Johnson. So as to Carter, it says, issue with facts versus elements. I'm having a hard time reading the rest of it. I don't trust the evidence because from Shreveport, I think is what it says. Again, it's the same page of the record. Would issue with facts versus elements be a race-neutral basis for striking Carter? It could be. What about, I don't trust the evidence because from Shreveport? Would that be a race-neutral basis? From the Shreveport police, I think is what that's about. It could be. So then, what about Hawthorne? Is there, I've got the transcript of the voir dire. There's the transcript of the voir dire. There were not notes. Ms. McGinnis threw her notes away, but that's, so with respect to Hawthorne, the reason, again, Ms. McGinnis did not remember why she struck Ms. Hawthorne. What she did in looking at the transcript, it was the fact that Ms. Hawthorne had answered a question about, by the defense counsel and said, well, there's a reason he's here. And in following up from, there's a reason he's here, she said, you know, he was brought here by the police. There's a reason he's here. And now that, of course, would also have been a cause challenge if that's what Ms. McGinnis in the moment thought was a reason to strike her. Can I pause you? Because at least according to my version of the transcript, it's way worse than that. So after all what you just said, there's a reason he's here, he's not just here by accident. Then Ms. Smith-Brown says, do you think that reason has anything to do with his guilt or innocence, Ms. Hawthorne? Yeah. So it strikes me if there's an error in striking Ms. Hawthorne, it was that why would you need a peremptory strike for striking somebody who said that? Right. Which, of course, has nothing to do with race. That reason alone has nothing to do with race. And then you put it in the context, Your Honor, for both the State v. Odoms trial, which is Carter and Johnson, and in the State v. Carter trial, unfortunately, same name, that's Ms. Hawthorne. In Odoms, Mr. Brown used seven of his strikes exclusively against black prospective jurors. In Carter, which was a smaller jury, so there were only six available strikes, Ms. McGinnis used three strikes total all against black jurors. Right, but two-thirds of the jury was black. That's correct. This is always an awful situation because we want everyone to be treated equally. So I appreciate the concern. But in that case, I mean, most of this case in your bucket is looking at statistics. If you look at the statistics there, and the fact is they still had challenges they could have exercised, the prosecution did, and yet they ended up with two-thirds of a black jury. How can you say that that's obvious, that the statistics — I'm not talking about the general ones, I'm talking about the specific ones — show that? Well, we're not saying that the statistics necessarily overcome those reasons. What we're saying is that a reasonable jury could find, with respect to applying the Flowers Criteria, that each of those three strikes were motivated in whole or in part by race. What I'm saying is that really the only evidence that deals with that year is the whole group of — I don't remember if it's 10 years, 12 years, whatever — you have a bunch of seem to be your primary evidence. And this statistic, though, because we have to look at the specific case, seems to be the other way. What we don't know, Your Honor, I don't think, on the record, is the race of the remaining part of the veneer in the Carter case, the case in which Ms. Hawthorne was struck. So for all we know, the rest of the veneer was more black than not black, and that this was the best that Ms. McGinnis could do. But the point is that if the strike is motivated by race, whether or not other black prospective jurors were taken, our claim is not that there's a custom or practice of striking every black prospective juror that exists. It's that there was a custom or practice to strike black jurors to — in the service of obtaining a predominantly white jury. Now, the fact that they didn't achieve that end in State v. Carter doesn't mean that that wasn't what they were doing and that that wasn't the reason why Ms. Hawthorne was struck. Now, Ms. McGinnis didn't ask any follow-up questions of Ms. Hawthorne. And again, so in an individual Batson case, it would not be — giving the purported race-neutral reason would not be sufficient to close down the inquiry. At that point, the finder of fact has to weigh all the factors and decide if the race-neutral reason is the genuine reason or if it is pretextual. And here, in the context of this lawsuit, the finder of fact is the What is the relevance of the Batson challenge in the Odoms case? What's the relevance of it? There was a Batson challenge. There was a Batson challenge. Judge Mosley determined that there was not a prima facie case, which I submit could have been a legal error. It doesn't matter. It doesn't matter for this purpose, whether it was or wasn't. I don't think there's much relevance to whether he objected or not. Certainly, it corroborates what Mr. Florence said in his declaration. I'm sorry. Maybe I asked the question inartfully. What I mean when I say what is the relevance is there is in Odoms, as to two of your plaintiffs, there is a Batson claim. It is adjudicated in the state court. And the Batson claim fails. And so my question is, you must, I would assume, because of the symmetry between Batson and Powers, you must argue that the Batson claim was wrongfully denied in Odoms, correct? No, I don't think so, Your Honor, because Or maybe I can ask it this way. Is there any way that you could be right under Powers, as to your client's claims, and that the Batson claim was correctly denied in Odoms? Yes, there is a way. And it is because in the case that Judge Mosley ruled on, the parties were the state of Louisiana and Sir Currie Odoms. Here, the parties are, with respect to that trial, Mr. Carter and Ms. Johnson and the office of the district attorney. So there is not privity of parties between Mr. Odoms and Ms. Johnson and Mr. Carter under this court's interpretation of issue preclusion, which requires virtual representation between those parties. Is there any court that's ever considered this question, the interaction between a failed Batson claim and a derivative Powers claim? Or maybe you would think it's a Powers claim and a derivative Batson claim. But has any court ever considered this? Well, our opponents cite the Shaw case out of the Ninth Circuit, where Shaw held that the potential jurors were bound by the ruling against the criminal defendant in the case. Because if you read Powers, it says the entire reason why we let the criminal defendant in the Batson context raise this claim that actually belongs to your clients, the jurors, is because there is such a symmetry of interest. In fact, Powers suggests that the criminal defendant has a more compelling interest because the criminal defendant is obviously in jail, whereas your clients just walk out of the jury box and they're struck and presumably go on about their day. So it seems a little bit odd to then come back around and say, well, actually, maybe there's not really that close of an interest, not privity. So maybe we should split from the Ninth Circuit and say the fact that the Batson claim fails says nothing one way or the other about whether the Powers claim succeeds. Two points to that, Your Honor. One is, I think this court's jurisprudence with respect to privity is well settled, and it requires virtual representation such that even a union member is not bound by a lawsuit that is union brought. And that's way closer to representative capacity than in this case. And I would also point out that, and we briefed this, it was actually one of our original claims, that Louisiana Code of Criminal Procedure 795C requires for a Batson challenge and for it to be granted that race or gender is the sole reason for the exercise of the peremptory challenge, whereas under Miller L., under Snyder, under Flowers, it doesn't have to be the sole reason. It can be partial, part of the reason. So I think even the district courts in Louisiana and in this system, obviously, the district court in Odoms could have, whatever it ruled, it was ruling with respect to a higher standard legally than what our clients are facing in terms of their constitutional claim. So that's my other answer to that. My time is running short, so let me just point out, in terms of the Diamond-Kaiser study, that you know the statistics. They're overwhelming. The district court held that we did not provide all of the potential variables to the experts, and that's why he wasn't considering their report to be valid. But this court has said that goes to the weight, not the admissibility, of that expert testimony. And in any event, the district court had denied our motion to compel discovery on the very things that the district court at Record 6601 did, attempted to, purported to disregard if it didn't strike the experts' report. My time is over. My sentence is done. I was going to say, you've saved time for rebuttals. Thank you, Your Honor. I'll tender to it. All right. We'll now hear from Allison Jones on behalf of Stewart. Good morning, Your Honors. Allison Jones and Marky Sandiford on behalf of James E. Stewart, Sr., the District Attorney for Caddo Parish, Louisiana. Your Honors, this is a case where the claims of appellate plaintiff are not based in fact. Indeed, this is a case where there exists no genuine issue of fact that the alleged policy or custom actually exists. This is a case where even if such policy or custom were to exist, and it did not, the appellate plaintiffs have failed to show a genuine issue of fact that the Caddo Parish District Attorney had actual or constructive notice of the same or that the policy or custom was the moving force. This is a case where the granting of summary judgment should be affirmed. The claim brought by plaintiff where a municipality can be held liable for acts attributable through other official actions. I will address the Monell claim, and I will also attempt to address the evidentiary issues presented on this appeal. While we acknowledge that this Court has de novo review of the summary judgment, we also acknowledge that the evidentiary issues should be reviewed for abuse of discretion. Addressing, then, the Monell claims, it is stipulated that there was no formal policy by the Caddo Parish District Attorney to exclude black jurors from jury selection. Thus, the appellate plaintiffs... Well, there's not going to be in that time zone, but there was some evidence that they were told, hey, you know, get rid of all the black people in a criminal case. There is some evidence of that. The only evidence submitted for that was the Cormier Declaration, which was a declaration that preceded the trials at issue here by over five years, and a declaration that had admitted hearsay in it. So... So you're saying if that was the general plan that people were told in 2010, well, by 2015 it would have changed. Now, I think when Stewart was elected, maybe it would have changed, but pre that? Well, the first thing I would say about that is there is no evidence of that. The only submitted evidence was the Cormier Declaration, which was a declaration that we moved to strike, and the court appropriately struck because it contained hearsay and it contained information that was temporally remote from the issue with respect to the 2015 trial. Well, how remote does it have to be? Because if somebody is brought in... So whenever it was that you first went to some class on how to do X, then that's how you do X, probably, unless anybody gives you a new class that says X has changed. So the notion that, oh, well, okay, 2010, now that ain't the same as 2015. What evidence is there that every year they came in and said, oh, no, no, no, now we're going to say you can only strike people because of something else? Well, I think the point is that, first of all, when you look at the specifics of the Cormier Declaration, even assuming that it had been admitted, it wouldn't have established that there was a formal policy, because the only thing that he said he was taught was to offer a race-neutral reason, which is what Batson requires when challenged. For being racist. Well, but, no, Batson requires a challenge that you offer. No, I mean, offer a race-neutral reason for being racist. That, it doesn't sound like what you're supposed to be doing. You're supposed to not just offer a race-neutral reason, but that should be your focus. Agreed. And there's nothing in the Cormier Declaration that says that it wasn't supposed to be that way. First of all, we submit that the Cormier Declaration was not admissible and it's not evidence. But even assuming for purposes of argument that it is evidence, it doesn't establish a formal policy. And, in fact, I believe in the district court that it was stipulated by the plaintiff appellants here that there was no formal policy with respect to in their bucket. Well, of course they're not going to do that in 2010 or 2015. They may have done it back in 1960 or something. I've heard those stories. But that doesn't mean people can't be going, hey, you know, we'd rather have the, this situation than that situation and so on and so forth, and so you need to, you know, reject those people. There's nothing that says people can't be whispering that and whispering it so much that it is basically the informal rule. I understand. And that then is establishing the Monell claim by a pervasiveness or a custom. Right. And as this court has said in the Sanchez decision, that's a very heavy burden to establish pervasiveness or a custom. And there's no evidence in this case with respect to that pervasiveness or custom. Well, the statistics that your opponent is upset about being thrown out basically the expert evidence on that, that is some evidence, isn't it? Well, it wasn't evidence accepted by the district court. We filed the Daubert motion, and it was, you know, I think he said our briefs were generally well written, and he granted that motion. If you look at that, we challenged the reliability. We challenged the fact that that particular statistical report did not include any of the subjective reasons that you include with respect to jury selection process. And we would caution this court, too, that, you know, while the matter of statistics exists, that even if they had been admitted, cold numbers don't often tell the story. As the United States Supreme Court has said in the Teamsters decision, you don't look at cold numbers, you look at what cold numbers can bring to life. And in this particular case, none of the actual plaintiffs understood that their claim, based on their own testimony, that they were struck by, for race. And the appellants here, while they come sometimes to talk about statistics, the courts recognize that statistics come in an infinite variety, and facts aren't as malleable. And when we look at the facts in this case, there were only 16 bats and challenges over a span of 12 years. That's 4.5% of the cases. The bats and challenges from that year, only two were granted. That's 0.52% of the cases. Two. Nothing in the Diamond-Kaiser report addressed that fact. And those particular facts versus a statistical summary of information are not as malleable because those particular facts established that there was no pervasiveness and there was no custom. Failing to bring . . . Can I ask you a fact about this particular case? Does the prosecution suspect that there was a relationship between Mr. Carter and the defendant? Why did they ask him if he knew the defendant? Well, if you look at the particular facts of that case, I believe that particular prosecutor was Jason Brown. And Mr. Carter says that he asked him and he was the only one. We don't have the record of that transcript for that Vardir because the DA didn't have control of that transcript. But when you look at the actual records of the notes kept by the prosecutor in the case, there were many race-neutral reasons for striking Mr. Carter from the jury. In that particular case, you know, when questioned, Mr. Carter said that he remembered very little about the jury selection process. He still believed he had been singled out, but his belief there would be what we would call a subjective belief. Just as in an employment discrimination case, subjective beliefs aren't evidence. They're just an opinion. There was no evidence that they had a relationship? There was no evidence that they had a relationship. The only reason to ask him that was because he's black and the defendant's black? Well, there were other blacks in the jury pool, and he said that he was targeted and asked that although he remembered very little about the jury selection process and we don't have the actual notes. But when you look at the, we don't have the actual transcript, but when you look at the actual notes that the prosecutor kept for why he struck him, there were race-neutral reasons for striking him in that particular case. That particular case also, you ended up with 14 jurors, jury members, 12 and two alternates, and of those 14, five were non-white, 36 percent in your jury pool. So coincidentally, if you look at the statistics of African-American and eligible jury members, it's 35.6. So it exceeded, actually, the statistics in the jury composition there did not indicate any sort of race bias. And I think that's the point here is we can look at statistics, but the Supreme Court has cautioned us that statistics are not irrefutable, that you have to actually look at the facts of the case. And when you look at the facts of the case here, those statistics do not bring the reality, the cold, they do not bring the reality to life. The cold light, they're cold numbers, but bringing it to life in this case, they did not establish a pervasive pattern. We also believe that the district court properly omitted that particular evidence. So not being able to rely on statistics then, the appellate plaintiffs went to declarations. And we've already talked about the Cormier Declaration and the fact that the district court struck that declaration because it contained hearsay, and he found it to be too temporally distant from both of the trials since it had existed over almost five years before. He had only tried two cases. He had never served as senior or lead trial counsel, and he expressed a that Cormier Declaration did not rise to what we call competent summary judgment evidence, and therefore it was struck because we know for summary judgment purposes, it has to be admissible or capable of being admissible at trial. And we believe the district court did not abuse his discretion in striking that declaration. Likewise, they relied on a declaration from a defense lawyer by the name of Mr. Florence. Mr. Florence did not have any personal knowledge of the inner workings of the DA's office. He claimed coded language, but the district court struck that as unsubstantiated hearsay, and that, once again, was not an abuse of discretion. And then they rely on James Stewart's, the current DA's, open letter when he was running for district attorney. And all Mr. Stewart actually said was, these issues circulating in the press are an embarrassment to Caddo Parish, and they are. And we don't dispute that any time that somebody alleges that you have committed racial discrimination, that that's an embarrassment and you have to defend yourself. He was a political candidate at the time. He had not served in the DA's office for over 22 decades before it was campaign speak and the district court properly excluded it. All of that evidence was not an abuse of discretion to exclude. So if you exclude the statistical report and you exclude the declarations, there is no evidence then to establish a pervasive or customary pattern. And even if that evidence had not been properly excluded, it would be harmless error here in this case. So for all of those reasons, we submit that the district court properly found that there was no genuine issue of fact regarding an alleged policy or custom by the Caddo Parish district attorney such that summary judgment was properly granted. The district court's inquiry could have stopped there, but it did not. The district court addressed the remaining elements of a Monell claim. And it addressed the fact that when we have a powers versus Ohio situation and we're dealing with Monell, we're taking two Supreme Court concepts and we're sort of merging them together. And I thought the opinion did a really nice job of doing that. Even assuming then that he went further and he said, look, just assume that there was a policy or a custom, you still haven't shown actual or constructive notice. And he went through an exhaustive survey of what was relied upon by the appellate plaintiffs in this case to establish knowledge. He noted that they admit that there was no actual knowledge and that they had to rely on constructive knowledge. He noted that there were only two temporally distant vassant violations during the entire period at issue here. And those are the statistics that I've already given you, only two being granted, which is 0.52% of the cases over a 12-year period. He went through each case where they attempted to support actual knowledge, and he pointed out that that could not have put the DA on constructive notice. And he also pointed out that at some point, the policymaker that they named was not even the appropriate policymaker because on the Odom's trial, I believe, the policymaker would have been District Attorney Charles Scott, who passed away right after the jury was selected and then Dale Cox came in. So they submitted no admissible evidence showing actual or constructive knowledge of any custom. And probably where the case could have stopped on each one of those levels, he went further and he said that there was no moving force showing here. And that's really where the heart of this case is, even assuming that he was incorrect on the first two. If you look at the moving force and you look at the specifics of the cases at issue, there's no way you can look at the specifics of the case at issue here and show that race was a moving force. They only offered the testimony of the three witnesses, the three jurors. Diane Johnson considered her entire jury experience a positive experience. Daryl Carter said it was only his subjective belief that he had been singled out. But if you look at that particular jury, that was a jury that was composed of a majority of sufficient color of the jury. And then Teresa Hawthorne stated, and I think Judge Odom, you pointed this out, that she was there for a reason. And I think you asked why would that, when you look at that cost challenge. And the DA answered that in his deposition. He said that he didn't want to fight a cost challenge. He had peremptories and he had peremptories left over and it was just easier to use a peremptory on that than to do a cost challenge. So when you look at the facts of each one of these cases, there's just not anything here that establishes a moving force. Failing to create then a genuine issue of fact on a Monell claim, the appellate plaintiff fell back on a failure to train theory. And we all know that that's the hardest part of these type of claims. I've tried to do it on both sides and it's difficult to prove. But in this case, it was even more difficult to prove because each one of the DAs in this case was a licensed lawyer. And we have the Connick case that says, look, if you're a licensed lawyer, you're assumed to know the law. Each one had kept up with their CLE credits. Each one, when deposed, could articulate the didn't select the jurors at issue in this case. Even though some of these trials were very distant in time and they didn't have notes, they could look at the transcript and say, here's why. So in conclusion, we believe that the district court properly granted the summary judgment in this case. There was no genuine issue of fact. And that the district attorney, James E. Stewart, Sr., was entitled to judgment as a matter of law. And we respectfully request that the decision be affirmed. I'm happy to answer any other questions that you may have, given that I have time left over, or I'm happy to give you four minutes. All right. All right. Thank you. All right. We'll hear the rebuttal. Thank you, Your Honor. First of all, with respect to the motion to strike the lay witness testimony and the does not argue, they don't concede, but they provide no argument whatsoever on the evidentiary striking of those materials. Their brief has one paragraph on this at page 52, where they only say the district court was right, but in any event, it doesn't matter. So we asserted that the hearsay statements were not hearsay under what they claim to be was not hearsay under 801D2D. And the district court, unfortunately, got it wrong because that court said that we didn't give any evidentiary basis, and we did. And secondly, the evidentiary basis was sufficient with respect to Mr. Cormier and Mr. Florence. Mr. Stewart's statement, whatever the context was or what it could have been, is that goes to the weight of the statement, not to its admissibility. And the actual paragraph that we're talking about does not say alleged. It simply says that the striking of these drawers without a reason other than race is a bad thing. Well, I mean, the problem is with that that he wasn't in the prosecutor's office. He was trying to get there as the top level, but he wasn't there for 20 years. So why would we even consider that? Well, this was right before the election. Judge Stewart had been a judge in the state trial system for many years before that. He testified in his deposition. I'm sorry I don't have the record sites for this, but he testified in his deposition that he talked to people in the DA's office. I mean, he didn't have to make that statement. But let me pass on from there because I do have some other things I'd really like the court to keep up with. First of all, and I'm sorry this is going to be a little scattered, but it's what I'm going to do with this amount of time. With respect to Daryl Carter, in the record at page 6597, he testified that he was the only person questioned on his panel about whether anyone knew the defendant, Sir Currie Odoms. Mr. Florence, in his declaration at record 4795, said his notes don't indicate that Mr. Carter said that he knew the defendant. Mr. Brown testified to the contrary and his notes are to the contrary. That's a classic contested issue of material fact, whether one, Mr. Brown directed a question only to a black male jury, two, whether the statement that he is making as a because there's no transcript and he says that's the reason, and he says also in his deposition testimony he asks every witness that question. Mr. Carter says he didn't. And then you put that with the inference that Your Honor mentioned during counsel opposite's argument that directing a question like that to just the black male who's on the panel opens the inference that this was done on account of Mr. Carter's race. Weren't there others and didn't get asked? I thought there was at least one other black person on the panel that wasn't asked. That was not asked? Yeah. I'm sorry. Was he the only black No. He was not the only black person. He testified he was the only person who was asked. Right. So then how does that prove discrimination? Well, he was I think the only black man on the panel, but even assuming, I mean the fact that it was directed at him. Well, women can know men. Fair. I think. Yes, no, fair. I'm not going to touch that one. Thank you, Your Honor. The district court did not, and I'm just going to keep moving on because I have seven seconds. The district court did not make a decision that Mr. Cox was not a final policymaker. That's not in the opinion. And Dr. Flicker totally endorsed our expert's methodology, said he even used it in cases where he was the plaintiff's counsel, where he was the plaintiff's expert. That's at of the jury. And this case should be reversed and set for jury trial. Thank you very much. Thank you. All right. The case is now under submission.